IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CIDI H. BROWN, | ) |
| | ) CIVIL ACTION NO.    2:19-cv-2812-DCN-BM |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MEVERS SCHOOL OF EXCELLENCE, | ) |
| CHARTER SCHOOLS USA, | ) |
| CHARTER SCHOOLS USA AT BERKELEY, | ) |
| LLC, BERKELEY CHARTER EDUCATION | )    **COMPLAINT** |
| ASSOCIATION, INC., | ) |
| JOHN SPAGNOLIA, individually and in his | ) |
| official capacity as Principal of Charter Schools | ) |
| USA at Berkeley and/or Mevers School of | ) |
| Excellence, STEWART WEINBERG, individually | ) |
| and in his official capacity as President and/or | ) |
| Chairman of the Berkeley Charter Education | ) |
| Association, Inc., CHARLES NUSINOV, | ) |
| individually and in his official capacity as State | ) |
| Director for the State of South Carolina for Charter | ) |
| Schools USA, REBECCA O'NEAL, individually | ) |
| and in her official capacity as School Operations | ) |
| Administrator for Charter Schools USA and/or | ) |
| Charter Schools USA at Berkeley, and the | ) |
| CHARTER INSTITUTE AT ERSKINE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Comes now the Plaintiff, Cidi H. Brown, by and through undersigned counsel, alleges

and says under this Honorable court the following:

## PARTIES

1. Plaintiff is an African-American female and is a resident of and domicile in the

County Charleston, State of South Carolina.

1

2. The Defendant, Mevers School of Excellence (The School), is a charter school duly organized and existing under the laws of the sovereign State of South Carolina. The School is located in Berkeley County, South Carolina.

3. The Defendant, Charter Schools USA (CSUSA), is a corporation, and based on belief and information, is duly organized and existing under the laws of the sovereign State of Florida.

4. At all times relevant herein, CSUSA, engage in the day-to-day management of The School is located in Berkeley County. Further, at all times herein, based on belief and information, the Defendant, Charter Institute at Erskine, is the enabling authorizer for the State of South Carolina that gave rise to the creation of The School in Berkeley County through the Berkeley Charter Education Association Board.

5. Further, the Defendant, Berkeley Charter Education Association, Inc. (Board of Directors), is the Board of Directors for the school located in Berkeley County.

6. That at all times relevant herein, Stewart Weinberg was the President and/or Chairman of the Board of Berkeley Charter Education Association (Board of Directors).

7. That at all times relevant herein, Rebecca O'Neal was the School Operations Administrator for The School and based on belief and information was an employee of CSUSA.

8. That at all times relevant herein, John Spagnolia was the principal of The School and employed either by the Board of Directors, CSUSA, and/or CSUSA at Berkeley LLC.

9. Based on belief and information, the Board of Directors entered into an agreement with the Defendant, CSUSA, to hire all staff and be responsible for the day-to-day operation of The School.

10. At all times relevant herein, the Defendant, Charles Nusinov, was employed by and the State Director for the Defendant, CSUSA, and in that capacity, proximately and/or remotely participated in the day-to-day operation of The School.

11. At all times relevant herein, Charter Schools USA at Berkeley, LLC (CSUSA at Berkeley, LLC), is a subsidiary of CSUSA and created by the Charter Institute at Erskine.

12. The Defendants, the Board of Directors, CSUSA, and the Charter Institute at Erskine, were vested with the authority to supervise administrators, teachers, principal, and assistant principals, including the hiring, termination of teachers, principals, assistant principals, and/or administrators.

13. The Defendants, Nusinov, Spagnolia, and O'Neal are sued for damages in their individual and/or official capacity.

14. Based on belief and information, the Defendant, Nusinov is a resident of and domicile in the State of North Carolina, County of Mecklenburg.

## JURISDICTION

15. The jurisdiction of this Court is invoked pursuant to Title VI of the 1964 Civil Rights Act, 28 U.S.C. 1331 and 1343. This is a civil action invoked pursuant to 42 U.S.C.A. 1983, as well as 42 U.S.C.A. 1982, 42 U.S.C.A. 1981, as amended, the Civil Rights Act of 1991, and the Fourteenth Amendment of the United States Constitution, seeking damages and injunctive relief against the Defendants committing acts under

color of law with intent and purpose of depriving the Plaintiff of rights secured to her under the Constitution and laws of the United States; retaliating against the Plaintiff for exercise of the constitutionally protected First Amendment right to free speech and/or protected speech, and refusing or neglecting to prevent the state such deprivation and/or denial to the Plaintiff.

16. The Plaintiff institutes this action pursuant to the rights accorded to her under 42 U.S.C.A. 1983; the Fourteenth Amendment of the United States Constitution; 42 U.S.C.A. 1981, as amended; the Civil Rights Act of 1991; Title VI of the 1964 Civil Rights Act; the First Amendment of the United States Constitution; and the Equal Protection Clause of the United States Constitution. At all times relevant herein, the Defendants were engaged in the enterprise of educating children in public schools/Charter schools and receive significant Federal monies to carry out its mission in regards to educating their students.

## **FACTS**

17. Plaintiff was initially employed by the Defendant, CSUSA on or about May 1, 2017 as an Assistant Principal. At that time The School was not officially open to receive students. In February of 2018, Plaintiff was promoted to principal-in-training with a commensurate pay increase.

18. The Plaintiff was task with the responsibility of, *inter alia,* making sure that the school was properly prepared to receive, as students, approximately six hundred (600) children.

19. The Plaintiff's direct supervisor was John Spagnolia, the newly hired principal of The School.

20. Early on in her employment, the Plaintiff was made aware by Mr. Spagnolia himself, of his dislikes for certain African-American students that had applied for admission to the new charter school. For example, Plaintiff recalls a specific conversation with Mr. Spagnolia about an African-American male student whom Spagnolia deemed then, as a troublemaker before school opened. During that conversation Mr. Spagnolia specifically stated that he was going to put this student on probation and if the student violated any rules, he, the African-American student, would be expelled.

21. Mr. Spagnolia expressed no similar or equal dislike for any Caucasians students. Further, Mr. Spagnolia did not, in any fashion, indicate that he would put any Caucasian students on probation, prior to the school opening, or would expel Caucasian students if they violated rules. Plaintiff avers that this discriminatory predilection and/or conduct by Mr. Spagnolia was intentional as it relates to African-American students.

22. Plaintiff, subsequent to Mr. Spagnolia targeting the African-American student, specifically expressed to Mr. Spagnolia, that that action against the African-American student, could be construed as intentionally discriminating against the student because of his race.

23. Over the next, approximately two (2) years, Mr. Spagnolia engaged in a course of conduct that was intentional racially discriminatory in regards to disciplining African-American students as opposed to Caucasian students. For example, The School's parent-student handbook stated, *"There is a zero-tolerance for aggression, drugs or alcohol at school"*.

24. A black student was discovered to have a very minuscule amount of marijuana at school. That student was recommended for expulsion. A white student repeatedly brought alcohol to school on more than three (3) occasions. However, Mr. Spagnolia would not recommend expulsion or any form of discipline for this Caucasian student.

25. On another occasion, a white student called a black student a *"nigger"*. Mr. Spagnolia bought both students to his office for a conference. When the white student refused to apologize, the black student became upset and asked Mr. Spagnolia how would he feel if he was called a *"cracker"*. The black student was recommended for expulsion and suspended by Mr. Spagnolia. No disciplinary action was taken against the white student.

26. For the 2018-2019 school year, Mr. Spagnolia completed seventy-five (75) out-of-school suspension. Of that seventy-five (75), fifty-seven (57) or seventy-one percent (71%) of were African-American students. For the same school year there were forty-three (43) referrals by Mr. Spagnolia, therefore minor incidents which resulted in loss of privileges, *inter alia*. Of that forty-three (43) referrals by Mr. Spagnolia, twenty-eight (28) or sixty-five percent (65%) of them were African-American students.

27. The Plaintiff repeatedly complained to Mr. Spagnolia about his intentional racially discriminatory conduct towards African-American students as opposed to white students. On none of the occasions did Mr. Spagnolia engage in any effort to correct the disproportionate disciplining of African-American students as opposed to Caucasian students. His conduct became more abrasive in terms of intentionally displaying racial animus towards black students and staff.

28. On one occasion, at the beginning of an administrative staff meeting, Mr. Spagnolia began to call the names of black students only. Then Mr. Spagnolia stated, *"Satan is alive and well and is in the building"*. Again, the Plaintiff complained to Mr. Spagnolia about his racially discriminatory animus disparaging remarks regarding African-American students. No such remarks were ever made in reference to Caucasian students. Yet, again, the Plaintiff complained vehemently to Mr. Spagnolia about his intentional racially discriminatory comments in an open staff meeting about black students.

29. During the school year of 2018-2019, up to the time the Plaintiff was suspended, with pay, Plaintiff complained privately, as well as to some parents, about the intentional racially discriminatory conduct black students and staff were receiving at the hands of the white administrators. Plaintiff also complained to the Defendant, Nusinov about the intentional racially motivated conduct of Mr. Spagnolia, as well as other white administrators, towards black students and staff.

30. The Plaintiff made handwritten notes of the conversations regarding her complaint to Mr. Spagnolia, as well as Nusinov, as it relates to the racially motivated conduct by white administrators towards black students and staff. Those notes were in the Plaintiff's desk on a legal pad and spiral notebook.

31. On or about May 15, 2019, the Plaintiff was abruptly suspended, with pay, by the Defendant, Nusinov, under the guise of an investigation being conducted for no verbally articulated purpose. When the Plaintiff questioned why or what was being investigated, the Defendants responded that they could not tell her. The Plaintiff was not allowed to secure all of her personal belongings, including but not limited to, the

7

personal notebooks containing the memorialization of the conversations between the Plaintiff, Spagnolia, and Nusinov.

32. Plaintiff was never disciplined, advised of any deficiency in her work performance, put on a performance improvement plan, or informed, in any manner, that her performance was below standard.

33. Plaintiff was subsequently verbally terminated by the Defendants, Nusinov, The School, CSUSA, and/or CSUSA at Berkeley, LLC. Plaintiff's contract was not renewed for the 2019-2020 school year. Plaintiff avers that her contract was not renewed because she, *inter alia,* complained about and was opposed to the intentional racially discriminatory conduct of the Defendants in regards to disciplining black students, as well as racially motivated conduct towards black staff members.

34. Subsequent to being, physically escorted from the campus at CSUSA at Berkeley, the Defendant, Rebecca O'Neal, along with other persons including, but not limited to, Spagnolia, Nusinov, and Weinberg, caused to be sent to approximately six hundred (600) parents, email(s) that accused the Plaintiff and another terminated black female administrator, of inappropriately mismanaging and/or spending CSUSA at Berkeley funds, taking school funds, and being incompetent as school administrators.

35. This communication to the parents of the students, that the Plaintiff was unfit for her profession, is actionable, *per se*, under South Carolina Law and consequently, damages are presumed.

**FOR FIRST CAUSE OF ACTION**
**(Violation of 42 U.S.C.A. 1981, as amended)**

36. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

37. The Plaintiff asserts that the Defendants, Spagnolia, Nusinov, Weinberg, O'Neal, The School, CSUSA, CSUSA at Berkeley, LLC, the Board of Directors, and the Charter Institute at Erskine discriminated against her in regards to her rights to be free from discrimination relative to her contract for employment in violation of 42 U.S.C.A. 1981, as amended.

38. The Plaintiff suffered humiliation, emotional distress, anxiety, and stress, as well as other physical illness, because of the Defendants.

39. Plaintiff asserts that the Defendants, individually and/or collectively, knew, or with the exercise of reasonable care, should have known, that they were acting in a willful, malicious, and reckless manner as it relates to the Plaintiff's constitutional rights and as a result thereof, Plaintiff is entitled to compensatory, consequential, and actual and punitive damages, as well as, attorney fees.

40. Further, Plaintiff asserts that each of the Defendants should be subject to punitive damages to be levied against them for willful, wanton, and reckless violation of the Plaintiff's constitutional rights.

**FOR SECOND CAUSE OF ACTION**
**(Violation of 42 U.S.C.A. 1981, as amended)**
**(Retaliation)**

41. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

42. The Plaintiff was retaliated against by the Defendants for engaging in a protected activity and by complaining about and opposing intentional race discrimination by the Defendants against the Plaintiff, minority students and staff.

9

43. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### (Constitutional Violation of Plaintiff's First Amendment Rights)
### (Freedom of Speech)
### (Against all Defendants)

44. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

45. Plaintiff asserts that all of the Defendants, individually and/or in their official capacity, retaliated against the Plaintiff, by way of not renewing the latter's contract of employment because the Plaintiff spoke up against racial discrimination that was being levied against minority students and/or minority staff members at the hands of all of the Defendants.

46. As a result of the Defendants' conduct, Plaintiff suffered public humiliation, and anxiety, resulting in damages, both punitive and actual, in an amount to be proven at trial.

## FOR FOURTH CAUSE OF ACTION
### Constitutional Violation of Plaintiff's First Amendment Rights)
### (Freedom of Speech)
### (Retaliation)

47. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

48. The Plaintiff made every effort to go directly to her superiors, Spagnolia and Nusinov, to address the intentional race discrimination against African-American staff and students.

10

49. All of her efforts fell on deaf ears and after the *"Satan is alive and real and in the building today"* comment, there was an increase in minority students being disciplined more harshly than Caucasian students.

50. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR FIFTH CAUSE OF ACTION
### (Violation of Plaintiff's Rights under 42 U.S.C.A. 1983)
### (Violation of the Fourteenth Amendment Rights to Equal Protection Under the Law)
### (Against all Defendants)

51. Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

52. Acting under color of law, all of the Defendants, individually and/or in their official capacity, discriminated against Plaintiff on the basis of her race in violation of her rights to equal protection as provided by the Fourteenth Amendment of the United States Constitution, as well as, other privileges and immunities subjecting the Plaintiff to disparate and/or discriminatory treatment because of her race.

53. Plaintiff asserts that she is entitled to actual, consequential, and compensatory damages, as well as, reasonable attorney fees and costs under the appropriate Civil Rights Attorney Fees Act.

## FOR A SIXTH CAUSE OF ACTION
### (Violation of Title VI of the 1964 Civil Rights Act)

54. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

55. Plaintiff asserts that the Defendants' conduct in intentionally discriminating against her as an African-American, as well as African-American students and staff, is contravened and is in direct conflict with the edicts of Title VI of the 1964 Civil Rights Act.

56. Plaintiff asserts that the discrimination against the Plaintiff was intentional and directly calculated to harm the Plaintiff, as well as, other members of the protected group.

## FOR SEVENTH CAUSE OF ACTION
### (Violation of Title VI of the 1964 Civil Rights Act)
### (Retaliation)

57. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

58. The Plaintiff was retaliated against by the Defendants for engaging in a protected activity and by complaining about and opposing intentional race discrimination by the Defendants against the Plaintiff, minority students and staff.

59. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR EIGHTH CAUSE OF ACTION
### (Defamation of Character)
### (Slander, Liable)

60. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

61. The Defendants, through their agents and/or servants, Nusinov, O'Neal, and Weinberg, communicated to the parents of the students, that the Plaintiff was unfit for

12

their chosen profession, and in so doing, damaged the reputation, by way of the defamatory words, of the Plaintiff.

62. Plaintiff suffered damages as a result of the communication of false and defamatory words concerning the Plaintiff's integrity and reputation within the community. In addition, Plaintiff has suffered special damages. Plaintiff is embarrassed, humiliated, and suffered mental injury.

**WHEREFORE**, Plaintiff prays judgment against the Defendants, individually and/or in their official capacity, as follows:

a. Compensatory damages,

b. Injunctive relief;

c. Consequential damages;

d. Punitive damages;

e. Attorney fees under the 1988 Civil Rights Act, 42 U.S.C.A. 1981, as amended, and 42 U.S.C.A. 1983;

And for such other relief as this court may deem just and equitable and proper.


BY:     s/*Edward M. Brown, Esquire*
EDWARD M. BROWN, ESQUIRE
Attorney for the Plaintiff
Federal I. D. No. 1510
P. O. Box 20261
Charleston, SC  29413
(843) 559-9224
(843) 559-9226 (Fax)


Charleston, South Carolina


Dated:  October 2, 2019

13